RICHARD ASKE v. DORIS ASKE (NOW DORIS TERRELL).[1]

April 13, 1951.

No. 35,348.

---

[1]Reported in 47 N. W. (2d) 417.

*O'Brien & Murray,* for appellant.
*Philip B. Gartner,* for respondent.

MATSON, JUSTICE.

Appeal from an order denying defendant wife's motion for a modification of a divorce decree which awarded custody of the minor child of the parties to the plaintiff husband.

On December 20, 1943, a decree of divorce was awarded to plaintiff. The custody of the parties' only child, a two-year-old daughter, was awarded to the father for the first six-month period and for such additional period thereafter until the mother, *should she want custody and control of such child,* applied to the court and showed "that she is a proper and fit person to have custody and control of said child, and that she has a home in which to take care of said child and that she will bring said child up in the proper moral surroundings." The father placed the daughter in the home of his parents, where she lived from December 20, 1943, until June 1949, when she went to live with her father and stepmother. On May 29, 1946, defendant executed a petition for a modification of the divorce decree as to custody, but it was never presented to the court for consideration. It was not until six and one-half years after the granting of the divorce, or until after the daughter had reached the age of nine years, that the mother actually applied to the court for a change of custody. Her application was denied June 1, 1950, and from the order of denial she appeals.

The sole issue is whether the trial court abused its discretion in refusing to change the daughter's custody from the father to the mother. In determining custody, the overriding and primary consideration is the welfare of the child, and to this welfare the rights of the parents must yield. Distinctly subordinate to this controlling principle is the rule that, as between parents, the custody of a child of tender years will ordinarily be awarded to the mother. This rule of preference is not only subordinate to,

but has its very roots in, the welfare of the child, in that an infant of tender years should not be denied the care, love, and affection of its mother. Under normal circumstances, there is no adequate substitute for a mother's care. Custodial preference for the mother, however, ceases to be a custody factor where she, by irresponsible or reprehensible conduct, indicates that she cannot be depended upon to give her child a mother's devotion in a moral and reasonably wholesome atmosphere. A rule deserves little recognition where the reason for its application is absent or ceases to exist.[2]

In the instant case we find no abuse of discretion. Implicit in the original award of custody to the father in 1943 was the justifiable finding that the mother was then unfit to be entrusted with her daughter's welfare. In recognition of a mother's important role in rearing a child of tender years, the trial court, however, wisely and generously provided that at any time after six months, *if she should so desire,* she might obtain a modification of the custody provisions by applying and showing to the court that she was then a fit and proper person to have custody and control of her daughter and that she would rear the daughter in proper moral surroundings. How did defendant respond to this challenge? Over a period of six and one-half years, while her daughter, in passing from two to nine years of age, needed a mother's care and love as she will never need them again, defendant made no effort to obtain a change of custody other than to sign a petition in 1946 which was not presented to the court. During this time, she drifted from one community to another and led an irresponsible life of apparently one carousal after another. She wrote several letters to her divorced husband which were not merely indiscreet but were direct admissions of actual misconduct wholly incompatible with the character of a mother to whom the care of a child may be entrusted. In May 1945 she was arrested and fined in Arkansas for serious misconduct. No purpose will be served by a detailed review. At

[2]Wicklem v. Wicklem, 229 Minn. 478, 40 N. W. (2d) 69; Christianson v. Christianson, 217 Minn. 561, 15 N. W. (2d) 24; Dacey v. Dacey, 179 Minn. 520, 229 N. W. 868.

the time of her application in May 1950 for a change of custody, she had remarried and established a home of her own and is now leading an apparently normal life. By reason of this commendable change in circumstance, she insists that she is entitled to be given a chance to assume her normal role as a mother before the daughter grows away from her entirely.

It must be borne in mind that the mother's rights, even after a commendable change of circumstance, must yield to the child's welfare. In solving custody problems, it is not easy to harmonize the conflicting wishes of divorced parents with the welfare of their children. Their natural rights should be carefully safeguarded but not at the expense of their offspring. In arriving at a solution, the trial court is vested with a broad discretion; and, in the absence of a showing of arbitrary action in the award of custody, an appellate court will not interfere with the exercise of that discretion.[3] Here the evidence is conflicting. Neither parent has much to offer in the stable qualities essential to successful parenthood. The father's conduct since the divorce has been by no means free from grievous fault. His second marriage, after the birth of two children, resulted in another divorce. He is now married for the third time. His present wife, who has a daughter of her own of about the same age as the daughter of the parties herein, appears, however, to be a stable homemaker who is providing a wholesome and happy atmosphere for both children. It is true that they reside in a trailer, but apparently it is reasonably large enough for comfort. Although the stepmother is a breadwinner, the father has his regular employment at a hatchery, and the trailer home is located nearby so that he is able, when the children are home from school, to give them reasonable supervision until the stepmother returns from her employment.

With the consent of counsel, the court conferred privately with the daughter, who expressed a strong wish to continue living with her father and stepmother. She enjoys the companionship

[3]Spratt v. Spratt, 151 Minn. 458, 185 N. W. 509, 187 N. W. 227; Novotny v. Novotny, 152 Minn. 420, 189 N. W. 258; In re Adoption of Jaren, 223 Minn. 561, 27 N. W. (2d) 656.

of her stepsister, of whom she is very fond. Although she was then only nine years old, we cannot say that it was an abuse of discretion to take her wishes into consideration. It was for the trial court, in its sound discretion, to appraise her intelligence and then to determine what weight, if any, should be given to her wishes in determining her custody. The intelligence of a child is not to be measured by any arbitrary age standard but rather by the mental development she has actually attained. See, State ex rel. Feeley v. Williams, 176 Minn. 193, 222 N. W. 927.

. In weighing the respective merits of the parents as custodians, with a proper emphasis upon the contribution normally to be made only by a mother, the court could well take into consideration that the nine-year-old daughter had been forsaken by her mother during the most formative period of her life when she most needed a mother's love and care. In light of the many years of neglect by the mother, we cannot say that the court may not have been justifiably in doubt as to whether she had now attained the degree of parental responsibility which is essential to a child's welfare. In other words, the reason for according the mother a custodial preference had practically ceased to exist. The court could justifiably find that whatever contribution the mother might now, at this late stage, make to the welfare of her daughter would be more than offset by the detriment that would result from tearing her away from her present congenial surroundings. A child is entitled to stability in home life and should not unnecessarily be exposed to the emotional upsets that come from the shunting of a child from one home to another. In reviewing a trial court's adjudication upon conflicting evidence, we must always bear in mind that, unlike an appellate court, it has the opportunity to hear and see the parties on the witness stand and to observe and appraise the sincerity of their attitude and purpose. Upon the evidence, we find no abuse of discretion, and the order of the trial court must be affirmed.

Defendant has moved this court for an order requiring plaintiff to pay  the costs, expenses, and attorneys' fees which she has in-

curred upon this appeal. She is not the prevailing party. M. S. A. 607.01 authorizes this court in its discretion to allow costs, not exceeding $25, to the *prevailing* party, upon judgment in his favor upon the merits, but in all cases the *prevailing* party shall be allowed his disbursements *necessarily* paid or incurred. See, Supreme Court Rule XV, 222 Minn. xxxvii; Krusemark v. Krusemark, 232 Minn. 416, 46 N. W. (2d) 647; Collins v. Collins, 221 Minn. 343, 348, 22 N. W. (2d) 168, 23 N. W. (2d) 9, 10. As a matter of law, plaintiff, not defendant, is entitled to an allowance of actual disbursements. We shall, however, deny him statutory costs. Defendant's request for attorneys' fees is not unreasonable, but we are confronted, with the necessity of adjusting any allowance therefor to the limited earnings of plaintiff—in the light of his family support obligations—and we therefore allow defendant attorneys' fees of only $125 to be paid by plaintiff—insofar as this sum is not offset by the taxation of disbursements in his favor—in installments of not to exceed $10 per month.

Affirmed.