## HERBERT POLZIN v. ROSE POLZIN (NOW LIND).[1]

June 20, 1952.

No. 35,650.

*Spellacy & Spellacy,* for appellant.
*Forrest T. Anderson,* for respondent.

MAGNEY, JUSTICE.

Plaintiff, Herbert Polzin, now 49, and defendant, Rose Polzin, now 31, were married in 1938. Four children were born as the issue of this marriage—Dennis, now aged 13, Keith, 10, and Linda and Louise, 7. Plaintiff brought an action for divorce against defendant on the ground of desertion. Defendant defaulted. On December 8, 1948, a divorce was granted and judgment entered. While the divorce action was pending, a stipulation was entered into between the parties that plaintiff should have the care and custody of the minor children of the parties; that plaintiff should maintain a home for them and keep them together in the same home so that they would not be separated from each other; and that defendant should have the right of visitation at all reasonable times and hours. The terms of the stipulation were incorporated into the findings and

---

[1]Reported in 54 N. W. (2d) 143.

judgment. A decree of adoption of Linda by Bertrand L. Ranger and Eva Ranger, his wife, was entered November 3, 1949. A decree of adoption of Louise by Warren Ranger and Evelyn Ranger, his wife, was entered on the same day.

On August 31, 1950, defendant moved the court for an order amending the divorce judgment and decree so as to award the care and custody of the children to her. On September 18, 1950, she moved to vacate and annul the adoption proceedings of Linda and Louise. The court granted the latter motions but denied her motion to have the divorce judgment and decree amended. Defendant appeals from the order denying her motion for amended and additional findings and amended conclusions of law or for a new trial.

The court vacated the adoption proceedings because of failure of petitioners to notify defendant of their pendency. This appeal concerns itself solely with the propriety of the court's order refusing to change the custody of the children. Defendant's reasons for a change of custody of the children to her are that plaintiff has failed to maintain a home for the children and keep them together, and that he approved the efforts of the Rangers to adopt Linda and Louise.

The parties were married in Minnesota, and the two boys, Dennis and Keith, were born here. In 1943 the family went to the state of Washington. The twins, Linda and Louise, were born there in 1945. In June 1946 the family came back to Minnesota. On July 4, 1946, plaintiff and defendant placed Louise in the home of Warren Ranger, a first cousin of defendant. She was then 11 months old. In November 1946 the family returned to the state of Washington. In February 1947, plaintiff and defendant sent Linda to the family of Bertrand L. Ranger, also a first cousin of defendant and a brother of Warren. Linda was then 17 months old. Defendant had written Eva Ranger, wife of Bertrand, to come to Washington and get Linda. Eva replied that she had no money with which to make the trip, so Linda was sent to Minnesota with a friend who had been visiting in Washington. The twins have been in the Ranger homes ever since they were first placed there. In the fall of 1946,

just before plaintiff and defendant returned to Washington, the Warren Rangers offered to give Louise back to them, stating to defendant that they would rather have them take her back at that time if they were going to take her back at all, as they had become attached to her. Warren testified that defendant said, "You can keep the baby."

In May 1947, defendant left the home of the parties without telling anyone where she was going or when she was coming back. A short time afterward, plaintiff took the two boys and returned to Minnesota. He returned to Washington again in November 1947 with the intention of re-establishing his home. During the time he was in Minnesota he heard nothing from defendant. When he returned to Washington, defendant moved out of her parents' home, where she was then living, and would have nothing to do with him. In March 1948, he returned to Minnesota with the boys and instituted divorce proceedings the following July. Defendant then returned to Minnesota and executed the stipulation above referred to. She remained in Minnesota over a month. The judgment granting plaintiff the divorce was entered on December 8, 1948. On October 15, 1949, defendant married one Chaldon Lind in the state of Washington, where she still resides. She met Lind about the time she left plaintiff, and from that time on kept company with him. In March 1948, she was involved in an automobile accident while riding with Lind.

The court found that defendant "has not manifested much interest or affection in the said children until the commencement of this proceedings; * * *." The record fully supports that finding. She made no inquiry of plaintiff about the two boys from the time she left home in May 1947 until they returned to Washington the following November. At no time has she written them a letter. When she was in Minnesota in 1948 at the time the divorce was pending, she did not visit the boys; in fact, she testified that she did not see them. She has not sent them presents directly, but has occasionally sent them presents through others. From the time Louise was placed in the home of Warren Ranger, defendant made no inquiry

by letter about the child. When she was in Minnesota a month or two while the divorce action was pending, she was in the house twice. She did not stop in to see Louise before she left Minnesota to return to Washington. At one time a string of pearls was given to Louise through defendant's mother. Nothing else was ever sent to her directly, but at times other relatives took gifts. Immediately after Linda was placed with the Bertrand Rangers, defendant wrote them two letters, but has written none since. At the time of the divorce she saw Linda twice. When she returned to the West, she left no address where she could be notified in case of illness of the children. Linda received only one present from her mother directly—a dress in 1947. In the summer of 1949, the grandmother took Linda a string of pearls from her mother. It is evident from the above facts that defendant did not show much interest in or affection for the children prior to the commencement of these proceedings, as found by the court.

After the divorce was granted, plaintiff attempted to get a housekeeper so as to keep the children together, but was unable to do so. He thought it best to leave the twins where they were. He owns 40 acres of land on which there is a small house of two rooms and a kitchen. Here he keeps house for the two boys. There is still $3,800 due on the property, on which he is making payments. He works as a track hand for the Oliver Iron Mining Company and earns about $100 every two weeks. No complaint was made as to the care plaintiff was giving the boys. They attend Sunday school and public school regularly. They are well fed, clean, neatly clothed, polite, and happy. They testified that they preferred to remain in the custody of their father. No complaint was made as to the Ranger homes, where the twins are being well cared for. The four children see each other five days a week at school and, in addition, two or three times a week. They know each other as brothers and sisters and visit back and forth at the respective homes. The girls know plaintiff as their father and refer to him as "Daddy Herb."

Defendant and her husband live in a motel or motor court, but expect to acquire better quarters. The husband is employed as a

galvanize spinner and earns $1.56 per hour for 48 hours a week. He did not appear at the hearing, but submitted an affidavit indicating his willingness to assume the responsibility of having the children in his home. The record indicates that he has never seen the children. Some testimony was received which indicated that defendant was not a neat housekeeper. There was considerable testimony received which reflected on defendant's conduct, especially with reference to her use of intoxicating liquor and her association with other men while she was married to plaintiff. She denied that she made a practice of drinking intoxicating liquor. Exhibit J, a letter written by defendant, was received in evidence. In it she states:

"* * * I'm all tired out, but I still manage a few benders but I sure feel it the next day at school. We have a southern girl going to school and she always says after I been out, Polzin you look like you been drinking some of that mountain dew or Red eye * * *."

A Caesarean operation was performed at the time the twins were born. Shortly thereafter defendant submitted to an operation to prevent her from having any more children.

On the above facts, the court refused to amend the divorce judgment and decree so as to take the care and custody of the children from plaintiff and award their care and custody to defendant.

We have stated and restated that the primary consideration in determining custody is the welfare of the child. It is unnecessary to cite the numerous cases. In determining where the welfare of the child lies, the trial court is vested with broad discretion. Here, the trial court, in addition to hearing all the evidence (which in this case covered over 550 pages of record), had the parties before him and was in a position to observe them as well as the whole situation. In a memorandum attached to the order denying defendant's motion for amended findings or a new trial, the court stated that after giving extended and thoughtful consideration to defendant's motion he felt very strongly that the findings and conclusions should not be disturbed. We fully agree with the trial court. The

apparently comfortable and happy home surroundings presently enjoyed by the children should not be taken away from them. The future conditions of a home with the mother are a matter of conjecture. She now lives in a motor court. Her present husband did not appear at the trial, and the record indicates that he has never seen the children. The court had no opportunity to observe him. Defendant's conduct in the past left much to be desired. The court was of the opinion that her conduct has improved, but that too is a matter of conjecture, as such conclusion must of necessity have been based in great part on her own testimony, and she was not a candid witness.

The facts in this case are very similar to those in Aske v. Aske, 233 Minn. 540, 47 N. W. (2d) 417. In that case, the court also refused to change the custody of a child from that of the father to the mother. There, as here, the mother had led an irresponsible life and had written self-convicting letters. Upon her remarriage, however, it was claimed that she had made a commendable change for the better. We said (233 Minn. 543, 47 N. W. [2d] 419) "that the mother's rights, even after a commendable change of circumstance, must yield to the child's welfare."

Defendant here is requesting this court to grant her attorneys' fees, costs, and disbursements in this court. Plaintiff has only a modest income, as our statement of facts indicates. He has a large encumbrance on his home, which he is paying off. He is supporting himself and the two boys. To order plaintiff to make payments to defendant, as she requests, would simply result in depriving the two boys of the necessities of life to which they are entitled. For these reasons, the request of defendant is denied.

Order affirmed.