HELEN NAOMI WATSON v. LELAND ALFRED WATSON.[1]

February 13, 1953.

Nos. 35,858, 35,881.

[1]Reported in 57 N. W. (2d) 691.

404

*A. M. Cary* and *Ben R. Toensing,* for appellant.

*Dorsey, Colman, Barker, Scott & Barber* and *John G. Dorsey,* for respondent.

KNUTSON, JUSTICE.

Two appeals, one from an order of the district court denying plaintiff's motion to amend and modify a divorce decree so as to award to her the custody of minor children and give to her additional property and the other from an order denying plaintiff's motion to set aside said order and grant a rehearing therein.

Plaintiff and defendant were married on February 11, 1939. Two children were born to this marriage.

Defendant is the president and principal stockholder of The Maico Company, Incorporated, which is engaged principally in the manufacture of hearing aids. He and plaintiff frequently traveled together to conventions and other places where the products of the company were demonstrated, principally to doctors. During the latter part of 1946 plaintiff became acquainted with a doctor who lived in St. Louis. Thereafter she carried on a correspondence with him. In some of his letters he professed his love for her. During

the summer of 1948 she went to Arizona alone, and he continued to write to her and also visited her while she was there. Shortly after July 15, 1948, plaintiff returned to her home and then informed defendant that she wanted a divorce. According to her own testimony, he was "completely taken aback." He did not want a divorce. In August 1948, plaintiff and defendant and their children went to a summer place which they owned on Rainy Lake in Canada. Defendant attempted to patch up their differences but was unsuccessful. On one of his trips to his home, defendant found some of the letters received by plaintiff from the St. Louis doctor and thereafter realized that it was hopeless to preserve the marriage.

In September 1948, plaintiff and defendant began discussing a property settlement which might be made if a divorce were obtained. The firm of which Charles F. Noonan was a member had been attorneys for the Maico company for many years. Plaintiff, through her association with her husband and her activities in connection with the affairs of the company, had full knowledge of the fact that this firm represented the Maico company and that Noonan had done work for it. Arrangements were made by defendant for both parties to go to Noonan's office. The testimony of plaintiff and defendant differs as to what took place, but in any event they did not come to an agreement at the first conference but later went there again, at which time a stipulation covering a property settlement was drawn. One of the main differences of opinion in connection with the property settlement at that time involved the transfer to defendant of some Maico stock which plaintiff held. Defendant did not want his divorced wife as a minority stockholder in his company, and plaintiff, on the other hand, wished to retain the stock. Finally it was agreed that the alimony which defendant was to pay should be increased from $300 to $350 per month, in return for which she agreed to surrender the stock.

Noonan then procured one R. D. Peck, an attorney at law, to handle the divorce for plaintiff. A complaint was drawn by Peck alleging cruel and inhuman treatment, without specifying the de-

tails thereof. The stipulation, which covered alimony, property settlement, and custody of the children, was signed by plaintiff and defendant, by R. D. Peck as attorney for plaintiff, and by Noonan's firm, as attorney for defendant. In the stipulation defendant acknowledged personal service of the summons and complaint. Plaintiff appeared in court with her witnesses and with Mr. Peck, and the case was proved up as a default case. The stipulation was submitted to the court and embodied in the court's findings. Findings of fact, conclusions of law, and order for judgment were filed; and judgment was entered on November 2, 1948, granting plaintiff a divorce, granting custody of the minor children to defendant, and awarding plaintiff such property and alimony as was provided for her in the stipulation. The transcript of the divorce case has been lost, but plaintiff, on the hearing of the motion for amendment of the divorce decree, freely admitted that she had been questioned by the trial judge, who was the same judge as the one who heard this motion, as to whether she was satisfied with the settlement shown in the stipulation and that she answered "Yes."

After entry of the judgment, plaintiff still demurred in turning over the Maico stock to defendant. Another conference was held in Noonan's office, and defendant then agreed to pay to plaintiff the dividends which would accrue and become payable on the stock she held as long as she remained unmarried in return for which she agreed to and did turn over the stock to him. A letter was drafted embodying the agreement and signed by defendant. Defendant has fully complied with the divorce decree and with this additional agreement in all respects.

Almost immediately after the entry of the divorce decree, plaintiff left for Arizona. She remained there about a year and a half, after which she returned to Minneapolis and retained her present counsel for the purpose of seeking an amendment of the divorce decree, claiming that she had been defrauded by defendant and attorney Noonan. In her affidavit submitted in support of her motion, she alleges that she was so defrauded and particularly that defendant threatened to expose the doctor with whom she had been correspond-

ing, among other things, in order to induce her to part with property which she would otherwise be entitled to. The motion came on for trial before the court upon the testimony of witnesses, and after a lengthy trial the court found that there was no fraud practiced upon her by either defendant or Mr. Noonan or anyone else in his office.

■ The determination of questions of fact in a hearing on a motion will not be reversed on appeal where there is substantial evidence to support the trial court's findings. Dillon v. Gunderson, 235 Minn. 208, 50 N. W. (2d) 275.

■ We have carefully examined a record containing some 467 printed pages of testimony and a brief of 90 printed pages, most of which recites the evidence. No good purpose can be served by setting forth in detail the testimony of the various witnesses as shown by the record. It is sufficient to say that we are convinced that the trial court's findings, as set forth in its memorandum, are amply sustained by the evidence. The record shows beyond a question that it was plaintiff who insisted upon a divorce. The evidence is convincing, if not conclusive, that she purposely left the love letters of her admirer in a place where she knew defendant would find them in order to induce him to abandon his opposition to a divorce. Even plaintiff's own sister-in-law, called by her as a witness, so testified. That she knew that Mr. Noonan, and the firm of which he was a member, represented the Maico company cannot well be denied. The evidence sufficiently establishes the fact that the property settlement was based on an agreement arrived at as a result of negotiations between the parties themselves and that Mr. Noonan not only did not advise her as to her property rights but that he did advise her to procure counsel of her own choosing. Looking at the case retrospectively, we agree that it might have been better had Mr. Noonan refused to have any part of the case unless plaintiff did procure counsel of her own choosing, but the trial court's finding that there is no foundation to the charges of fraud, overreaching, or bad faith on the part of Mr. Noonan is supported by the record.

The questions presented here are at best questions of fact for the trial court's determination.

■ Plaintiff now also attacks the jurisdiction of the court to grant the divorce at all, claiming that there was no legal service of the summons and complaint upon defendant and that the findings of cruel and inhuman treatment are insufficient to sustain the court's order for judgment. She did not challenge the jurisdiction of the court in her original motion. Irrespective of the motion itself, plaintiff is now estopped from questioning the jurisdiction of the court or the sufficiency of the findings to support the decree of divorce.

In re Ellis' Estate, 55 Minn. 401, 56 N. W. 1056, 23 L. R. A. 287, involved a divorce decree obtained in a foreign state. After the divorce had been granted, the husband remarried. Subsequent to his death, his first wife contended that she was his widow, basing the claim on her contention that the divorce was void for lack of jurisdiction. We there said (55 Minn. 413, 56 N. W. 1059):

"* * * But the parties do consent, and why should they be heard to complain of the consequences to them of what they have done? Why should they be permitted to escape those consequences by saying: 'It is true that by false oath made by one of us, and connived at by the other, we committed a fraud in the Wisconsin court, and induced it to take cognizance of the case; but now we ask to avoid its judgment by proof of our fraud and perjury or subornation of perjury.' Because we do not think it can be done the parties must, so far as their individual interests are concerned, abide by the judgment they procured that court to render; * * *."

We have applied the same rule in adoption proceedings. In In re Adoption by Reichel, 148 Minn. 433, 435, 182 N. W. 517, 518, 16 A. L. R. 1016, we said:

"* * * When the adoptive parents invoke the jurisdiction of the court and get the order or decree they ask for and take the child into the family and treat it as their own, they are estopped from thereafter asserting that the child was not legally adopted, and the estoppel extends to their heirs and personal representatives."

The same rule has been applied in many cases from foreign jurisdictions. In Rediker v. Rediker, 35 Cal. (2d) 796, 805, 221 P. (2d) 1, 6, 20 A. L. R. (2d) 1152, where many cases are collected, the California court said:

"* * * The validity of a divorce decree cannot be contested by a party who has procured the decree or a party who has remarried in reliance thereon, or by one who has aided another to procure the decree so that the latter will be free to remarry."

See, also, People ex rel. Carr v. Murray, 357 Ill. 326, 192 N. E. 198, 94 A. L. R. 1487; 3 Freeman, Judgments (5 ed.) § 1438.

Even in the case of a divorce decree concededly void for want of service of summons, a party may be estopped from denying its validity where he has accepted the benefits and privileges of the divorce. Marvin v. Foster, 61 Minn. 154, 63 N. W. 484.

There can be no doubt in this case that it was plaintiff who sought and obtained the divorce. She claims no fraud so far as a procurement of the divorce itself is concerned, the alleged fraud going only to the question of property settlement. Neither can there be any question that she has accepted and retained the benefits of the divorce decree. The stipulation signed by all the parties admits service of the summons and complaint. We believe that the evidence fully sustains the court's findings that the divorce was valid, but, even if that were not true, plaintiff is now estopped from denying its validity.

■ We find no evidence in the case which would warrant a change in custody of the minor children. Plaintiff voluntarily surrendered custody to defendant. He is now remarried, and the children have made such readjustment, over a long period of time, as has been necessary. Under these circumstances, it would not serve the welfare of the children to now change their custody.

We see no merit in these appeals. The only questions presented are questions of fact. Experienced counsel should know that we do not try such questions *de novo*. The evidence not only sustains the court's findings, but in most instances is so convincing that it is

410

well-nigh conclusive. We do not believe that it would be just under these circumstances to compel defendant to pay attorneys' fees and expenses to his former spouse for conducting such an abortive appeal. It is therefore ordered that no attorneys' fees or expenses are allowed in this court.

Affirmed.

UPON APPEAL FROM CLERK'S TAXATION OF COSTS.

On March 20, 1953, the following opinion was filed:

Per Curiam.

Appellant objects to the clerk's taxation of the cost of printing a supplemental record, which cost amounts to the sum of $41. The supplemental record includes certain letters offered and received in evidence and also an affidavit of a doctor having some training in psychiatry, which was not used in the trial below. The supplemental record is 19 pages in length; the exhibits comprise ten pages and the affidavit nine. The exhibits were properly printed, but the affidavit could serve no purpose here, not having been used in the court below. The cost of printing the exhibits is allowed in the sum of $21, and the cost of printing the affidavit is disallowed in the sum of $20. It is ordered that the clerk amend the taxation of costs and disbursements accordingly.