SEDGWICK R. MacWHINNEY v. PATRICIA L. MacWHINNEY.

79 N. W. (2d) 683.

December 7, 1956—No. 36,678.

---

*Nehls, Anderson and Zimpfer,* for appellant.
*John J. Kelly* and *Wellington H. Law,* for respondent.

MATSON, JUDGE.

Appeal by the wife from an order denying her motion to modify a divorce decree by transferring the sole custody of a minor child from the husband to the wife, which order also granted the husband's motion to modify the wife's visitation rights to the extent of denying her the privilege of taking the child from Minnesota for an annual visit to her California home.

The sole issue is whether the trial court abused its discretion in its determination of the above motions.

Plaintiff husband and defendant wife were married on May 6, 1946. There is one minor child of the marriage, Merilee MacWhinney, born October 25, 1947. The District Court in Anoka County on February 5, 1953, granted plaintiff a divorce from defendant on the ground of desertion. In contemplation of a divorce, the parties stipulated that plaintiff should have the sole custody of their minor daughter subject to defendant's right to visit the child in plaintiff's home and subject to her further right to take the child to her (defendant's) California home during the six-week period from July 1 to August 15 each year. The original divorce decree incorporated the terms of the above stipulation. The order of modification, dated March 19, 1955, denied the wife's motion for a change of custody

and modified the final decree *by eliminating therefrom the provision granting the wife the right to take the child to her California home.* As modified, the decree continued the sole custody of the child with the father, subject only to the mother's right to visit the child in the father's home at all reasonable times.

In passing on the sole issue of an alleged abuse of discretion, we must consider certain additional facts. After their marriage in the State of New York, the parties lived together in their Orcutt, California, home until April 1951, at which time the plaintiff went to the city of Oakland for aeronautical training. While he was at Oakland, defendant wife, who then had the burden of supporting herself and daughter without plaintiff's aid, wrote plaintiff that she no longer desired to live with him. About this time defendant misappropriated money of her employer but made restitution. In November of 1951, defendant voluntarily turned the child over to the plaintiff who had decided to locate in the State of Minnesota. She now alleges that she surrendered the child because of plaintiff's alleged threat to make her misappropriation of funds public. Over a year later, however, after the husband had resided with the child in Minnesota over a year and had commenced an action for divorce, she entered into a written stipulation (signed by herself and her attorney) whereby she consented to the award of the sole custody of the child to her husband. She alleges that she so stipulated with the knowledge that she could always apply later for a modification of the decree.

During the summer of 1953, defendant properly exercised her privilege under the final decree in taking the child to her California home and later returning the girl to the father's home in Minnesota. In September 1953, defendant married for the third time. On or about July 1, 1954, defendant again came to Minnesota and took the child to California for a visit in her new home. Instead of returning the child to Minnesota in compliance with the final decree, defendant instituted an independent action in California to obtain custody of the child for herself. Plaintiff appeared in the California action. Despite the undeniable fact that the Minnesota court had

long before acquired jurisdiction,[1] the California court entertained the action and awarded the child's custody to the mother subject to the right of the father to take the child to Minnesota for temporary visitation in his home. In December 1954, the father, plaintiff herein, under the visitation provisions of the California court's order, took the child to Minnesota. Ever since that time he has had control of his daughter.

In February 1955, plaintiff served upon the defendant a notice of motion and an order to show cause for the purpose of having her adjudged in contempt of court for failure to obey the final decree and for the further purpose of amending the final decree so as to deprive defendant of all her rights of visitation. Defendant also moved the court for an order amending the final decree so as to grant her sole custody of the child. Pursuant to a hearing upon the above order and upon the respective motions of the parties, the court entered its order continuing sole custody of the child with the father and modifying the decree whereby the mother was deprived of any right to remove the child from the father's home to California for visitation purposes.

It should be noted that plaintiff on October 28, 1954, married again and has established a new home in Overland Park, Kansas. His wife, by a former marriage, has two daughters who are of the ages of approximately seven and nine years. Plaintiff and defendant's daughter is now nine years old. For the purpose of this appeal, it will, upon the evidence adduced, be assumed that defendant's new home and plaintiff's home both furnish a suitable and wholesome environment for the proper rearing of their daughter.

---

[1]Since a proceeding to determine custody of a minor child partakes of the nature of an action in rem, the res being the status of the minor, only the court of that state in which the minor is domiciled can fix or change that status. It is generally recognized that, where parents are divorced, the domicile of a minor child becomes that of the parent to whose custody it has been legally given. Here the exclusive custody of the child was vested in the father who was domiciled in Minnesota. State ex rel. Larson v. Larson, 190 Minn. 489, 252 N. W. 329, 18 Minn. L. Rev. 591; cf. Restatement, Conflict of Laws, §§ 32, 147, 148.

■ We are not here concerned with the rule which governs an initial award of custody upon the divorce of the parents, pursuant to which the custody of a child of tender years, in promoting and safeguarding its welfare, is normally awarded to the mother.[2] Instead, we have a motion to modify an original divorce decree so as to change the custodial status after the child's exclusive care and custody has been vested in the father for approximately five years.[3] During the important and formative period in the child's life from the age of four years to the age of nine years, she has been entrusted, and has become adjusted, to the father's sole care. Here, as in Watson v. Watson, 238 Minn. 403, 409, 57 N. W. (2d) 691, 695, the mother has voluntarily surrender custody of the child, and the child, deprived of a mother's normal affection and love over a long period, has made the requisite adjustment in her emotional life. Stability in the home surroundings and in parental supervision of a child of tender years is an important factor which has a deep and lasting effect upon the child's emotional life and development, and that stability, *after it has once been maintained over a period of years,* should not be disturbed by a change of custody unless other paramount considerations demand a change for the child's welfare.[4] We here find no other controlling considerations warranting a change of custody. There has been a marked improvement in the mother's ability to provide a good home, but that change of circumstance is not of itself controlling since the father's home also provides a wholesome environment conducive to the child's welfare.

[2]Spratt v. Spratt, 151 Minn. 458, 185 N. W. 509, 187 N. W. 227; Aske v. Aske, 233 Minn. 540, 47 N. W. (2d) 417; Wicklem v. Wicklem, 229 Minn. 478, 40 N. W. (2d) 69; Johnson v. Johnson, 223 Minn. 420, 27 N. W. (2d) 289; Christianson v. Christianson, 217 Minn. 561, 15 N. W. (2d) 24; Larson v. Larson, 176 Minn. 490, 223 N. W. 789.

[3]In November 1951, the care and custody of the child was surrendered by the mother to the father. In February 1953, the child's exclusive care and custody was vested in the father by the divorce decree. Subject only to certain visitations in the mother's California home, the father's custody and control has been exclusive and continuous to this date.

[4]Kaehler v. Kaehler, 219 Minn. 536, 18 N. W. (2d) 312.

308

■ We also have a special circumstance militating against a change of custody, namely, the mother's wilful violation of the court's final decree. In her testimony she frankly admitted that in 1954, when she exercised the privilege of taking the child from this jurisdiction to her California home, she had no intention whatever of returning the child if she could find any legal means to prevent it. Her conception of proper legal means was to circumvent and defeat the orders of the Minnesota court, which had jurisdiction of the child's status, by resorting to the court of another jurisdiction. Under the circumstances, the trial court could reasonably conclude that she was unworthy of her responsibility which goes with an award of a child's custody. It goes without saying that, in determining or limiting the custodial or visitation rights relating to a minor child, the court may properly take into consideration a parent's wilful violation of its decrees. No young child should be made the victim of a tug of war between parents or between the courts of two conflicting jurisdictions. In the instant case, the recurrence of the situation twice encountered, in which one parent refused to return the child to the other at the appointed time, is certainly to be avoided, for it must have an extremely disturbing and harmful effect on the child's emotional life. It can only lead to bitterness between the child and one or both of its parents. For this same reason, the court was justified in depriving the mother of all right to take the child from the father's home to California.

■ In the light of these principles, the trial court was justified in its limited modification of the final decree and we find no abuse of discretion. It is not to be overlooked that a trial court is vested with a broad discretion in determining what custodial arrangement best serves the welfare of a child,[5] and, since the determination of the facts are within the trial court's province, an appellate court will interfere with the exercise of that discretion only on a showing of arbitrary action or a clear abuse of discretion.[6]

[5]Polzin v. Polzin, 237 Minn. 164, 54 N. W. (2d) 143; French v. French, 236 Minn. 439, 53 N. W. (2d) 215; Novotny v. Novotny, 152 Minn. 420, 189 N. W. 258.

[6]Watson v. Watson, *supra;* French v. French, *supra;* Aske v. Aske, *supra.*

Since the defendant wilfully violated the custodial and visitation provisions of the final decree, she is awarded no attorney's fees upon this appeal.

The order of the trial court is affirmed.