IN RE WELFARE OF MELISSA ANN LARSON.
LUTHERAN SOCIAL SERVICES AND
ANOTHER v. L. GEORGE STONER.

251 N. W. 2d 325.

February 18, 1977—Nos. 46524, 46743.

*William R. Kennedy,* Hennepin County Public Defender, and *Catherine L. Anderson,* Assistant Hennepin County Public Defender, for appellant mother.

*James D. Kempf,* for appellant Lutheran Social Services.

*James R. Bennett,* for respondent father.

Heard before Todd, MacLaughlin, and Yetka, JJ., and considered and decided by the court en banc.

YETKA, JUSTICE.

These appeals arise out of a dispute as to the custody of Melissa Ann Larson, a child born out of wedlock to appellant Eva Lyn Larson on May 17, 1975, and fathered by respondent L. George Stoner. Appellant Lutheran Social Services filed a petition for termination of parental rights. Appellants separately appealed from an order of the district court terminating the rights of Ms. Larson and transferring the guardianship and legal custody of the child to Mr. Stoner. We affirm in part and reverse in part.

The issues raised are the following:

(1)   Whether Lutheran Social Services has standing to appeal the termination of Ms. Larson's parental rights after one of its agents, on its behalf, petitioned for the termination of her rights and the order appealed from granted relief consistent with that petition.

(2)   Whether the trial court abused its discretion in terminating Ms. Larson's parental rights.

(3)   Whether the trial court abused its discretion in failing to terminate the parental rights of Mr. Stoner, the father of the illegitimate child, and in awarding him custody of Melissa.

The conception of the child took place during a time of marital infidelity for Mr. Stoner, then 38 years old. Following his marriage in Florida in March 1973 to his present wife Joyce, who was also 38 years old, Mr. and Mrs. Stoner moved to a farm near Danvers, Minnesota. This was Mr. Stoner's second marriage and Mrs. Stoner's fourth marriage. In the spring of 1974 they began to disagree over their respective marital roles. Division of labor on the farm and the degree of personal freedom allowed Mrs. Stoner were the two principal subjects of disagreement. During

this time Mrs. Stoner left Minnesota to stay for several days with her sister in Illinois, but did not attempt a separation.

Both Mr. and Mrs. Stoner were admitted to hospitals for mental health care during this period. Mr. Stoner entered Willmar State Hospital in July 1974 for a day and a half as a voluntary patient because of "nerves" associated with the marital problems he was having with his wife, but did not receive any medication, treatment, or diagnosis. The hospitalization apparently was an attempt to remove himself from conflict, to rest, and to reflect on the situation from within a different environment.

It was at Willmar State Hospital that Mr. Stoner met Ms. Larson, another patient. Ms. Larson, who was unmarried and 23 years old, had entered the hospital on July 3 and was being treated for a "chemical make-up deficiency." She had been hospitalized once before for the same reason for 3 weeks at Glenwood Hills Hospital in 1971. After spending a day and a half at the hospital, Mr. Stoner checked out and took Ms. Larson back to the farm where they stayed overnight while Mrs. Stoner was away.

In the middle of July, the Stoners separated after a brief trip to Texas together failed to result in a reconciliation. Mrs. Stoner moved to Florida and Mr. Stoner returned to the farm in Minnesota.

Upon his return, Mr. Stoner went to Willmar State Hospital for a half day, but did not receive any treatment. He picked up Ms. Larson and signed out of the hospital.

The ensuing intimate relationship between Mr. Stoner and Ms. Larson lasted about 5 months. After a brief visit to Mr. Stoner's brother in Illinois, the couple moved back to the Stoner farm where they lived until November 1974. At that time Mr. Stoner sought a reconciliation with his wife and, accompanied by Ms. Larson, went to Florida. Mrs. Stoner was aware Ms. Larson had accompanied Mr. Stoner and, although she did not see Ms. Larson

during that time, understood that her husband and Ms. Larson were living together.

On December 31, 1974, Mr. and Mrs. Stoner reconciled their marital differences. The next day Ms. Larson left Florida by bus and returned to her parent's home in Clinton, Minnesota. Mr. and Mrs. Stoner left several weeks later and returned to their farm.

Ms. Larson made her first contact with appellant Lutheran Social Services on March 10, 1975. Her pregnancy was confirmed the next day when she visited a doctor in Minneapolis. She did not try to contact Mr. Stoner, who knew of the possible pregnancy several months earlier. After the initial screening, Ms. Larson met with Elsa Skogerboe, a social worker and employee of Lutheran Social Services, on March 17. Ms. Skogerboe became "primarily responsible" for Ms. Larson's care and later became the petitioner in the termination proceedings. Working as an intermediary, Ms. Skogerboe wrote to Mr. Stoner on April 4 explaining that Ms. Larson was making plans to place her child for adoption and requesting that he arrange to sign the necessary consent forms. She further informed him if he did not respond they would proceed with termination proceedings. Mr. Stoner wrote to Ms. Larson in care of Ms. Skogerboe during the first week in May. The contents of the letter, however, were not introduced into evidence. Ms. Skogerboe wrote to Mr. Stoner again on May 15, 1975, on behalf of Ms. Larson and requested a meeting to talk about plans for the child.

On May 17, 1975, Melissa was born. Her birth certificate did not name her father. On May 21 and again on May 28, Mr. Stoner called Ms. Skogerboe to inquire, in general terms, about possible plans for Melissa. In response, Ms. Skogerboe arranged a meeting for June 2 between Ms. Larson and Mr. Stoner. Mr. Stoner did not keep the appointment.

On June 4, 1975, Ms. Skogerboe, acting as an agent of Lutheran Social Services, petitioned Hennepin County District Court,

Juvenile Division,[1] for a termination of parental rights, alleging that Melissa was illegitimate and that Ms. Larson could not provide a home for her and was unable to assume responsibility for the child's care. The petition, which did not list Mr. Stoner as the father, further alleged that these facts established the first of six possible grounds for termination of parental rights under Minn. St. 260.221—namely, "written consent of parents who for good cause desire to terminate their parental rights."[2] A hearing date was set for June 19.

---

[1] See, Minn. St. 260.225 (Venue for termination proceedings).

[2] Minn. St. 260.221 provides: "The juvenile court may, upon petition, terminate all rights of parents to a child in the following cases:

"(a) With the written consent of parents who for good cause desire to terminate their parental rights; or

"(b) If it finds that one or more of the following conditions exist:

"(1) That the parents have abandoned the child; or

"(2) That the parents have substantially and continuously or repeatedly refused to give the child necessary parental care and protection; or

"(3) That, although the parents are financially able, they have substantially and continuously neglected to provide the child with necessary subsistence, education, or other care necessary for his physical or mental health or morals or have neglected to pay for such subsistence, education or other care when legal custody is lodged with others; or

"(4) That the parents are unfit by reason of debauchery, intoxication or habitual use of narcotic drugs, or repeated lewd and lascivious behavior, or other conduct found by the court to be likely to be detrimental to the physical or mental health or morals of the child; or

"(5) That following upon a determination of neglect or dependency, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination; or

"(6) That in the case of an illegitimate child the person is not entitled to notice of an adoption hearing under section 259.26 and either the person has not filed a notice of his intention to retain parental rights under section 259.261 or that such notice has been successfully challenged."

Although the statute uses the term "parents," this court has interpreted it to allow one parent to initiate the filing of the petition (In re

At the hearing on June 19, both Mr. and Mrs. Stoner appeared as interested parties and the matter was continued until July 18, at which time the court entertained a request from Ms. Skogerboe for a custody report on Mr. and Mrs. Stoner by the Swift County Welfare Department.

On July 25 Mr. Stoner executed an acknowledgment of paternity pursuant to Minn. St. 259.261.[3]

---

Welfare of Zink, 264 Minn. 500, 504, 119 N. W. 2d 731, 734 [1963]) and to permit termination of the rights of only one parent (In re Petition of Zerby, 280 Minn. 514, 516, 160 N. W. 2d 255, 257 [1968]).

[3] Minn. St. 259.261 provides: "Subdivision 1. Any person not entitled to notice under section 259.26, shall lose his parental rights and not be entitled to notice at termination, adoption, or other proceedings affecting the child, unless within 90 days of the child's birth or within 60 days of the child's placement with prospective adoptive parents, whichever is sooner, that person gives to the division of vital statistics of the Minnesota department of health an affidavit stating his intention to retain parental rights.

"Subd. 2. Such affidavit shall contain the claimant's name and address, the name and the last known address of the other parent of the child and the month and the year of the birth of the child, if known.

"Subd. 3. Upon receipt of the aforementioned affidavit the division of vital statistics of the Minnesota department of health shall notify the other parent of same within seven days. This notice to the parent shall constitute conclusive evidence of parenthood for the purposes of this statute, unless within 60 days of its receipt, either the notified parent or some other interested petitioner denies that claimant is the parent of the child and files a petition pursuant to chapter 260 to challenge such notice of parenthood."

This section was added in response to the United States Supreme Court's decision in Stanley v. Illinois, 405 U. S. 645, 92 S. Ct. 1208, 31 L. ed. 2d 551 (1972), wherein that court struck down an Illinois statute which provided that illegitimate children were declared wards of the state upon the death of their mother without any hearing on the parental fitness of the unwed father. While the facts of Stanley involved a father who had lived with the mother in a de facto marriage for 18 years before her death, and who had custody of and had lived with the children of this "marriage" intermittently throughout the 18 years, it was unclear whether the decision required a similar notice of a hearing under any of the instances enumerated in Minn. St. 259.26,

The custody report was received August 4, and on August 7 the termination hearing took place. In addition to the facts already recited, the principal evidence received was the custody report, which was favorable to Mr. and Mrs. Stoner. In addition to this evidence, Ms. Larson testified under cross-examination as to her intent to give the child up for adoption. Based on this evidence the court terminated the parental rights of Ms. Larson and ordered custody of the child transferred to Mr. Stoner.

Lutheran Social Services, however, failed to transfer custody of the child to Mr. Stoner, whereupon Mr. Stoner petitioned for a writ of habeas corpus. At the same time Lutheran Social Services and Ms. Larson brought a motion for amended findings or, in the alternative, for a new trial, arguing that Ms. Larson had not consented to the termination. The motions were heard together, and thereafter the court issued a further order which affirmed his previous order.

■ One of Lutheran Social Services' agents, Elsa Skogerboe, is the petitioner and one of its attorneys appeared at the termination proceedings. Only when the court failed to terminate the rights of Mr. Stoner in addition to terminating the rights of Ms. Larson did Lutheran Social Services begin to question the validity of its own petition.

On appeal Lutheran Social Services challenges not only the granting of custody to Mr. Stoner but also the termination of Ms. Larson's rights, and, thus, the validity of their own petition. Fundamental principles of estoppel, however, prevent them from so doing. See, 6B Dunnell, Dig. (3 Rev. ed.) § 3218, and cases cited under footnote 93. Cf. Watson v. Watson, 238 Minn. 403, 57 N. W. 2d 691 (1953); Kenning v. Reichel, 148 Minn. 433,

---

subd. 3(a) to (e). In response, notice to a father who has filed an acknowledgment of paternity pursuant to Minn. St. 259.261 was provided for in § 259.26, subd. 3(f). For a general discussion of the rights of an illegitimate father pre-Stanley, see, Note, 50 Minn. L. Rev. 1071 (1966).

435, 182 N. W. 517, 518 (1921). See, generally, 28 Am. Jur. 2d Estoppel, §§ 68 to 75; 31 C. J. S., Estoppel, §§ 116 to 118.[4]

In Behrens v. Kruse, 121 Minn. 90, 98, 140 N. W. 339, 343 (1913), this court stated:

"* * * No principle is better settled than that litigants cannot be permitted either to assume inconsistent positions during the progress of litigation or to shift their claims or the facts at their pleasure. This is especially true if such would result to the prejudice of the party who has acquiesced in the position formerly taken. Tozer v. Ocean Accident & Guaranty Corp. 94 Minn. 478, 484, 485, 103 N. W. 509. This is merely an application of the doctrine of estoppel."

---

[4] We feel compelled to comment on the procedure and documents utilized by Lutheran Social Services in these proceedings. The form used as a petitioner for termination of parental rights in this case is set out in full as an appendix following this opinion.

The petition asserts *under oath* that the parents have consented in writing to the termination proceedings. In fact, no such consent was introduced at the hearing. Furthermore, Lutheran Social Services now denies such consent was ever obtained. Secondly, the father's name and address were omitted although known to Lutheran Social Services at the time of the petition. While we accept the explanation of counsel at oral argument that the persons executing the petition were not lawyers and that as a practice consent is not obtained in advance of hearing for fear that the claim will be made that the consent was obtained under duress, it would be better practice either to obtain the consents or to state specifically that they have not been obtained. The parties and the court are entitled to rely on statements made under oath as part of the record. Therefore, in the future we trust petitioners in termination proceedings will not state in their petitions that consents of the parents have been obtained when, in fact, they have not, and will not omit a parent's name and address when, in fact, these are known. The potential for abuse is well illustrated in this case where the petitioner did not list the name of the father in the petition and yet now claims he should not be allowed to contest the termination of his rights because his name did not appear on the birth certificate and his acknowledgment of paternity was made too late to satisfy the requirements of Minn. St. 259.261.

And, in Tozer v. Ocean Accident & Guaranty Corp. 94 Minn. 478, 485, 103 N. W. 509, 511 (1905), this court quoting from Davis v. Wakelee, 156 U. S. 680, 15 S. Ct. 555, 39 L. ed. 578 (1895), said:

"* * * 'It may be laid down as a general proposition that where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position 'formerly taken by him.'"

■ With regard to the termination of the parental rights of Ms. Larson, however, we should point out that although she did not object to termination for purposes of adoption, she did express objection at the hearing when she first understood the court was considering the possibility of awarding custody to Mr. Stoner. The record is not clear that she was ever made aware of that possibility until the hearing itself. Thus, while Lutheran Social Services does not have standing to appeal the order terminating her rights, Ms. Larson does have such standing. Because of our doubt that she was ever made aware of the possible ramifications of the petition and because there is no written consent executed by her in the record, we find that there was no evidence for the trial court to terminate her parental rights and the district court is reversed on that portion of its order. Nor does the evidence support termination on any other statutory ground. The trial court stated in its original findings:

"The mother is primarily interested in providing a two parent home for the child, commendably recognizing that she cannot provide this herself; thus she substantially declines to provide parental care, *as alleged in the Petition and enounced in the statute.*" (Italics supplied.)

And also said in its amended findings:

"The mother gave the child up for adoptive placement, fully indicating that she did not consider herself ready, willing or able

to provide proper parental care during the child's minority, changing her mind in this regard only when it became apparent that the natural father might obtain custody in her stead.

"The natural mother has not proferred any plan or arrangement by which she herself would provide parental care for the child, but rather insists that the child must go to adoptive placement with strangers."

However, neither of these findings is a clear and specific finding under the statute that the mother either abandoned the child or that she had "substantially and continuously or repeatedly refused to give the child necessary parental care and protection." See, In re Petition of Zerby, 280 Minn. 514, 160 N. W. 2d 255 (1968). The latter would be the only other statutory basis which would have relevancy here.

■ On the remaining issue, we find no abuse of discretion on the part of the trial court in failing to terminate the parental rights of Mr. Stoner and awarding him custody. Appellants argue Mr. Stoner's parental rights should have been terminated automatically because his name did not appear on the birth certificate of the illegitimate child and his acknowledgment of paternity was defectively filed.

This argument is rejected for several reasons. First, Mr. Stoner's affidavit of paternity was not defective. Lutheran Social Services vigorously argued that the affidavit, although executed on July 25, was not filed until August 4, 1975, and thus did not satisfy the 90-day requirement contained in Minn. St. 259.261. An examination of the birth certificate, however, reveals, contrary to appellants' assertion that the child was born on May 7, that the child was born on May 17, 1975. Thus, even assuming the document was not received by the division of vital statistics of the Minnesota Department of Health until August 4, the 90-day filing requirement was met. Moreover, this court has held on numerous occasions that the burden of proof in termination

proceedings lies with the petitioner.[5] Even assuming the filing had been beyond the 90-day limit, the petitioner failed to introduce competent evidence the acknowledgment was not received within the time allowed. Although no case has yet arisen on this specific issue, no reason appears to depart from the general rule in this instance.

Secondly, Mr. Stoner's appearance at the hearing and his verbal acknowledgment of his paternity afforded him the right to have his proposals for the welfare of the child considered by the court along with any other plan or proposal urged by the mother, any child welfare agencies, or interested parties. In re Welfare of Zink, 264 Minn. 500, 119 N. W. 2d 731 (1963). Thus, the trial court properly considered the plans offered by Mr. Stoner for the welfare of Melissa.

In assessing sufficiency-of-the-evidence claims the applicable test is well-settled. In Molto v. Molto, 242 Minn. 112, 114, 64 N. W. 2d 154, 156 (1954), this court stated:

"* * * [T]he trial court is vested with broad discretionary powers and in the absence of a showing of arbitrary action in awarding custody of a child, this court will not interfere. It should be kept in mind that a trial court, unlike an appellate court, has the opportunity to see the parties as well as their witnesses, hear their testimony, observe their actions, and weigh the evidence in the light of those factors. In the absence of a clear abuse of discretion the action of the trial court must be affirmed."

In regard to the possible termination of Mr. Stoner's parental rights the court found:

"* * * The father's lifestyle is unusual, but it has not been demonstrated that it is beyond the community's moral pale, nor has it been demonstrated that his lifestyle will in the foreseeable

---

[5] E. g., In re Welfare of Barron, 268 Minn. 48, 53, 127 N. W. 2d 702, 706 (1964).

future provide less than minimal standards of parental care for the child."

And further:

"* * * The child being illegitimate, the rights of the father are paramount to all the world except the mother's, and under present legal and sociological trends may well be equal to the mother's: Both committed the same sin, if sin it be."

The facts as previously recited, as well as the custody report of the Swift County Welfare Department, supply sufficient support for these findings.

Rights of custody, of course, must always be subordinated to the best interests and welfare of the child.[6] With this qualification, however, this court has stated (In re Welfare of Zink, 269 Minn. 535, 540, 132 N. W. 2d 795, 798):

"* * * The general rule which we follow is that an award of custody of an illegitimate child to the admitted father as against the claims of relatives and welfare agencies may be approved under circumstances where the mother rejects the child and the putative father is competent to care for and suitable to take charge of the child * * *."

The custody report, the principal evidence entered at the termination hearing, reflected favorably on the ability of Mr. and Mrs. Stoner to care for the child. Under the facts of this case, following the recommendations of that report does not amount to an abuse of discretion. This court has previously noted that the recommendations of public welfare departments are to be accorded great weight by the district court.[7]

---

[6] See, In re Welfare of Shady, 264 Minn. 222, 229, 118 N. W. 2d 449, 454 (1962); In re Adoption of Jaren, 223 Minn. 561, 569, 27 N. W. 2d 656, 661 (1947).

[7] See, In re Petition of Alsdurf, 270 Minn. 236, 239, note 3, 133 N. W. 2d 479, 481 (1965), citing In re Adoption of Zavasky, 241 Minn. 447, 453, 63 N. W. 2d 573, 577 (1954).

The order of the trial court terminating the parental rights of the mother are reversed. Its order refusing to terminate the rights of the natural father and awarding him custody are affirmed.

---

APPENDIX
PETITION FOR TERMINATION
OF PARENTAL RIGHTS

STATE OF MINNESOTA

County of Hennepin

DISTRICT COURT—
JUVENILE DIVISION
Fourth Judicial District

File No. 86058

In the matter of the welfare of
Melissa Ann Larson, Child.

---

Petitioner, being duly sworn, on information and belief, alleges and states that:

1. The following facts are true as to the Child or Children named above:

a. Said child is illegitimate.

b. Mother cannot provide a home for the child and is unable to assume responsibility for the child's care.

2. Such facts prove the following grounds of termination of parental rights under Statute 260.221.

(X)   Parents for good cause consent in writing.

(  )   Abandonment by parents.

(  )   Parental care continuously refused.

(  )   Basic needs of child continuously refused.

(  )   Parents unfit due to seriously harmful conduct.

(  )   Previous neglect uncorrected despite help.

3. The following are the names, dates of birth, residences, and post office addresses of the Child or Children, the names, races, religious preferences, residences, and post office addresses of the parents, and the names, residences, and post office addresses

of any guardians or legal custodians or nearest relatives, and spouses of the Child or Children. Melissa Ann Larson, 5-17-75, 5256—Girard Ave. North, Minneapolis, Minnesota. Mother: Eva Lyn Larson, white, religious preference Lutheran, R.R. 1, Clinton, Minnesota.

WHEREFORE Petitioner calls upon the Court to inquire into the foregoing and, if proven according to law, to terminate, forever, any and all rights which the parents have to the Child or Children, to place the Child or Children under appropriate guardianship beyond the control or influence of the parents for possible adoption without the knowledge or consent of the parents.

JUVENILE COURT HEARING scheduled for June 19 at 3:30 p.m. at 1000 South Sixth Street, Minneapolis.

Filed 6-4-75                          Petitioner's Signature
Clerk of Dist. Ct., Henn. Co.         ELSA SKOGERBOE
MARGARET NELSON
   Deputy

Sworn to before me on information and belief this 4 day of June, 1975. — Laverne Anderson, Notary Public, Hennepin County, Minnesota. My commission expires Aug. 6, 1975.