# IN RE WELFARE OF BABY BOY SHADY.

118 N. W. (2d) 449.

November 30, 1962—No. 38,925.

*Fred Albert* and *Chester A. Bruvold,* for relators.

*William B. Randall,* County Attorney, and *A. E. Ranum,* Assistant County Attorney, for respondents.

KNUTSON, CHIEF JUSTICE.

This is a petition for a writ of prohibition.

For the purpose of this decision only, the following facts alleged in the petition and not denied in the return must be taken as true.

Ardella Shady is the mother of Baby Boy Shady, born out of wedlock on October 5, 1962. Ardella is 29 years old and married to George Shady. She has not lived with her husband for about 5 years and does not know his whereabouts. She has four children, admittedly born of this marriage, living with her in St. Paul of the ages of 9, 8, 5, and 3 years.

Roland Papenfuss has executed an admission of paternity of this child. He also is married and lives with his wife in St. Paul. He is 36 years of age, and there are no children born of this marriage. He is willing to assume all financial obligations in regard to the maintenance

and support of the baby and wishes to have custody of it. The child has been with Roland and his wife since birth.

Alleging that Baby Boy Shady is a dependent and neglected child in that "his mother intends to place him for adoption in a manner which could be detrimental to his welfare; that his mother is unwilling to provide him with necessary subsistence, education and care," the Ramsey County Welfare Department requested legal custody of Baby Boy Shady with authority to place him in a suitable home. The petition came before the Juvenile Court Division of the District Court on October 25, 1962. All parties were present in court, including the mother of the child and the admitted father and their attorneys. Without hearing any evidence, the court made an order reading as follows:

"IT IS HEREBY ORDERED that this matter be continued until January 14, 1963, for contested hearing before the Judge of Juvenile Court at 10:00 A. M.

"IT IS FURTHER ORDERED that George Shady, who is still legally married to Ardella Shady, be served with notice of hearing according to law.

"IT IS FURTHER ORDERED that Baby Boy Shady be forthwith placed under the temporary legal custody of the Ramsey County Welfare Department until January 14, 1963, which is the first open date for hearing on the merits, and that this matter for temporary legal custody be stayed for the period of five (5) days from the date hereof."

Apparently the order placing the temporary legal custody of the child with the Ramsey County Welfare Department is based on the following finding of the court:

"That the Ramsey County Welfare Department in open court on this date requested that the above-named child be placed under their temporary legal custody until the date of the contested hearing."

There is no finding or any showing made that any necessity existed for removing the child from the custody of its putative father pending the hearing on the petition to determine dependency and neglect.

We issued our writ of prohibition restraining further action under the court's order relating to temporary custody of the child pending a determination of the validity thereof.

The question presented is whether a juvenile court, over the objection of the mother of an illegitimate child and without any showing that the child actually is being neglected, may, without a hearing and determination of dependency or neglect, remove such child from the custody of the admitted father, where the child remains with the consent of the mother, pending a hearing on the petition by the welfare board.

The court relies for its authority on Minn. St. 260.221, which reads:

"The juvenile court may, upon petition, terminate all rights of parents to a child in the following cases:

"(a) With the written consent of parents who for good cause desire to terminate their parental rights; or

"(b) If it finds that one or more of the following conditions exist:

"(1) That the parents have abandoned the child; or

"(2) That the parents have substantially and continuously or repeatedly refused to give the child necessary parental care and protection; or

"(3) That, although the parents are financially able, they have substantially and continuously neglected to provide the child with necessary subsistence, education, or other care necessary for his physical or mental health or morals or have neglected to pay for such subsistence, education or other care when legal custody is lodged with others; or

"(4) That the parents are unfit by reason of debauchery, intoxication or habitual use of narcotic drugs, or repeated lewd and lascivious behavior, or other conduct found by the court to be likely to be detrimental to the physical or mental health or morals of the child; or

"(5) That following upon a determination of neglect or dependency, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination,"

and § 260.155, subd. 1, which reads:

"Except for hearings arising under section 260.261, hearings on any matter shall be without a jury and may be conducted in an informal manner. Hearings may be continued or adjourned from time

to time and, *in the interim, the court may make such orders as it deems in the best interests of the minor in accordance with the provisions of sections 260.011 to 260.301.* The court shall exclude the general public from these hearings and shall admit only those persons who, in the discretion of the court, have a direct interest in the case or in the work of the court. Adoption hearings shall be conducted in accordance with the provisions of laws relating to adoptions." (Italics supplied.)

The only case relied upon by the court in its return here is In re Jones, 114 Ohio App. 319, 182 N. E. (2d) 631, a court of appeals decision dated March 17, 1961. In that case parents sought by habeas corpus to obtain release of children taken into custody of the welfare board during a delinquency proceeding. The court denied the petition for habeas corpus, basing its decision largely on the fact that no illegality in the custody had been shown. It is of little help here.

We think that it goes without saying that, if a child is actually abandoned or so neglected that its welfare is in jeopardy, the juvenile court should have the right to take immediate custody of it. We think that the statutes clearly give the court this right. It is equally clear that the statutes contemplate a showing of some kind that an abandonment or actual neglect exists before the court can take custody of a child at the initiation of the proceedings without first making a determination that the child is dependent or neglected to the extent that its welfare requires immediate action. Except for the bare allegation of dependency in the petition, there appears to be no claim here that the child is either abandoned or actually neglected.

A dependent child is defined in Minn. St. 260.015, subd. 6, as follows:

" 'Dependent child' means a child:

"(a)   Who is without a parent, guardian, or other custodian; or

"(b)   Who is in need of special care and treatment required by his physical or mental condition and whose parent, guardian, or other custodian is unable to provide it; or

"(c)   Whose parent, guardian, or other custodian for good cause desires to be relieved of his care and custody."

A neglected child is defined in § 260.015, subd. 10, as follows:

" 'Neglected child' means a child:

"(a) Who is abandoned by his parent, guardian, or other custodian; or

"(b) Who is without proper parental care because of the faults or habits of his parent, guardian, or other custodian; or

"(c) Who is without proper parental care because of the emotional, mental, or physical disability, or state of immaturity of his parent, guardian, or other custodian; or

"(d) Who is without necessary subsistence, education or other care necessary for his physical or mental health or morals because his parent, guardian or other custodian neglects or refuses to provide it; or

"(e) Who is without the special care made necessary by his physical or mental condition because his parent, guardian, or other custodian neglects or refuses to provide it; or

"(f) Whose occupation, behavior, condition, environment or associations are such as to be injurious or dangerous to himself or others; or

"(g) Who is living in a facility for foster care which is not licensed as required by law, unless the child is living in the facility under court order; or

"(h) Whose parent, guardian, or custodian has made arrangements for his placement in a manner detrimental to the welfare of the child or in violation of law; or

"(i) Who comes within the provisions of subdivision 5, but whose conduct results in whole or in part from parental neglect."

Throughout our Juvenile Code runs the requirement that a hearing is necessary in all cases except those involving such neglect of a child that immediate transfer of custody is necessary. Section 260.135 reads in part:

"Subd. 2. The court shall have notice of the pendency of the case and of the time and place of the hearing served upon the parents, guardians, or spouse of a legitimate minor or the mother, guardian, or spouse of an illegitimate minor, if they are not summoned as provided in subdivision 1.

\* \* \* \* \*

"Subd. 5. If it appears from the petition or by separate affidavit of a person having knowledge of the fact that the minor is in such condition or surroundings that his welfare requires that his custody be immediately assumed by the court, the court may order, by endorsement upon the summons, that the officer serving the summons shall take the minor into custody at once."

In the adoption of the new Juvenile Code in 1959, the interim commission, upon whose recommendation the act is based, commented on subd. 5 of the above section as follows (Report of Interim Commission on Public Welfare Laws, Proposed Juvenile Court Act, 1959, p. 35):

"The provisions of this subdivision are new, providing a mechanism by which the court may assume immediate custody of a minor in addition to the issuance of a warrant as provided by proposed section 20 [now § 260.145]."

Section 260.145 provides:

"If any person personally served with summons or subpoena fails, without reasonable cause, to appear or bring the minor, he may be proceeded against for contempt of court or the court may issue a warrant for his arrest, or both. In any case when it appears to the court that the service will be ineffectual, or that *the welfare of the minor requires that he be brought forthwith into the custody of the court, the court may issue a warrant for the minor.*" (Italics supplied.)

Section 260.165 provides:

"Subdivision 1. No child may be taken into immediate custody except:

"(a) With an order issued by the court in accordance with the provisions of section 260.135, subdivision 5, or by a warrant issued in accordance with the provisions of section 260.145; or

"(b) In accordance with the laws relating to arrests; or

"(c) By a peace officer

"(1) When it is reasonably believed that a child has run away from his parents, guardian, or custodian, or

"(2) When a child is found in surroundings or conditions which endanger the child's health or welfare; or

"(d) By a peace officer or probation or parole officer when it is reasonably believed that the child has violated the terms of his probation, parole, or other field supervision."

Section 260.231, dealing with the termination of parental rights, provides:

"Subd. 2. The termination of parental rights under the provisions of section 260.221, *shall be made only after a hearing before the court, in the manner provided in section 260.155.*" (Italics supplied.)

While these provisions deal mainly with the right of the court to take immediate custody of a child when the proceeding is begun rather than with the right to take custody after the child and other interested parties are already in court, it would seem that they clearly evince a legislative intent that some showing be made that the welfare of the child necessitates taking immediate custody prior to the hearing before that can be done. If the court lacks power to take immediate custody of the child at the time the summons is served without a showing of necessity, it is difficult to see any good reason why it acquires that power when the parties appear in response to the summons.

In this case, the only basis for attempting to take immediate custody was the desire of the welfare board. Removing the child from the custody of an admitted father, where the child remains with the consent of the mother, should rest on something more substantial than the whims of the welfare board if the child is receiving adequate care.

Obviously, the determination of dependency or neglect, based on sufficient evidence to sustain it, is essential before the parental rights may be eliminated.

A parent, as defined in § 260.015, subd. 11, means the natural or adoptive parent of a minor. This definition is the same as under the adoption laws, § 259.21, subd. 3.

That the putative father of an illegitimate child is considered to be a parent is evidenced from the adoption statutes, § 259.24, subd. 1, where it is provided:

"No child shall be adopted without the consent of his parents and his guardian, if there be one, except in the following instances:

"(a)    Consent shall not be required of the father of an illegitimate child."

Section 260.135, subd. 2, dealing with service of summons, reads:

"The court shall have notice of the pendency of the case and of the time and place of the hearing served upon the parents, guardians, or spouse of a legitimate minor or the mother, guardian, or spouse of an illegitimate minor, if they are not summoned as provided in subdivision 1."

In the comments of the interim committee drafting this provision we find the following (Report of Interim Committee on Public Welfare Laws, Proposed Juvenile Court Act, 1959, p. 34):

"Subd. 2.    This proposal differs from existing law in limiting the number of relatives to be notified if they are not summoned under subdivision 1. *The provision eliminates notice to the father of an illegitimate, as is done in the adoption law, section 259.26, subdivision 1.*" (Italics supplied.)

While the admitted father of an illegitimate child may not have the same rights to custody as a father whose child is born of a lawful marriage, he has some rights. Under our inheritance laws, admission of paternity gives the child a right to inherit from the father. § 525.172. It may be that under circumstances such as we have here the child will have a better home with the putative father than with an entire stranger. It has been held that the rights of a putative father to the custody of an illegitimate child, while inferior to those of a mother, are superior to the rights of any other person.[1]

While we need not determine this question in the present proceeding, it must be kept in mind that in any determination of the right to custody of a child, whether legitimate or illegitimate, the paramount consideration is the welfare of the child.

It is apparent that neither the mother nor the putative father have abandoned the child or consented to relinquish its custody. The mother

---

[1]Aycock v. Hampton, 84 Miss. 204, 36 So. 245, 65 L. R. A. 689, 105 A. S. R. 424; Pote's Appeal, 106 Pa. 574, 51 Am. R. 540; 7 Am. Jur., Bastards, § 63; 10 C. J. S., Bastards, § 17c.

is willing and desirous of having the admitted father care for it, but states that if he cannot have custody she wishes to have her child. Illegitimacy of itself is not dependency.

In State ex rel. Mattes v. Juvenile Court, 147 Minn. 222, 225, 179 N. W. 1006, 1007, we said:

"* * * Manifestly, the intent of this statute is to exclude from its operation a child having a parent able to provide for its proper support and who does not consent to separation from it, whether such child be illegitimate or legitimate."

Unless some showing more than that which is before us is made that it is necessary that the custody of the child be taken immediately, it appears clear that the statutory provisions quoted above were not intended to give the juvenile court such power. It follows that the writ should be made absolute.

Writ made absolute.