IN RE WELFARE OF BABY BOY ZINK.

119 N. W. (2d) 731.

February 8, 1963—No. 38,670.

*Hall, Smith, Hedlund, Juster, Forsberg & Merlin* and *L. Howard Bennett,* for appellant.

*George M. Scott,* County Attorney, and *Douglas X. Juneau, Gerard Snell,* and *William S. Posten,* Assistant County Attorneys, for respondent Hennepin County Welfare Department.

*Mackall, Crounse, Moore, Helmey & Holmes* and *Floyd E. Nelson,* for respondent Children's Home Society of Minnesota.

*Harvey E. Skaar,* for respondent Audrey Zink.

*Walter F. Mondale,* Attorney General, and *Galen M. Cadle,* Assistant Attorney General, for Department of Public Welfare, amicus curiae.

*Walter U. Hauser,* for Lutheran Children's Friend Society of Minnesota, amicus curiae.

*James D. Kempf,* for Lutheran Welfare Society of Minnesota, amicus curiae.

*James H. Levy,* for Jewish Family Service, amicus curiae.

*Robert L. Speeter,* for Catholic Welfare Association of Minneapolis, Catholic Charities Diocese of Winona, Inc., and Diocesan Catholic Charities Archdiocese of St. Paul, amici curiae.

ROGOSHESKE, JUSTICE.

This is an appeal from an order of the juvenile court denying the putative father's motion for a new hearing in a proceeding to terminate parental rights pursuant to Minn. St. 260.221.[1]

The essential facts taken from the affidavits and transcript of the testimony establish the following: Baby Boy Zink is an illegitimate child born on July 3, 1961, to Mrs. Audrey Zink, aged 40, who, it is established, had lived apart from her husband, Robert Zink, for some time prior to the birth. There is no question that Robert Zink is not the father of the child. When the baby was a little more than a month old, on August 15, 1961, the mother executed a written affidavit of consent whereby she agreed to the commitment of her child to the guardianship and legal custody of the Children's Home

---

[1] § 260.221 provides in part: "The juvenile court may, upon petition, terminate all rights of parents to a child in the following cases:

"(a) With the written consent of parents who for good cause desire to terminate their parental rights; * * *."

Society, a licensed child-placing agency, for the purpose of placing the child for adoption. The affidavit also included the consent to adoption, as provided by § 259.25, subd. 1,[2] and waiver of notice of hearing upon a petition to adopt a child, provided for by § 259.26, subd. 1.[3]

Prior to the execution of this consent agreement a petition had been filed by a representative of the Hennepin County Welfare Department on August 2, 1961, in the Juvenile Court of Hennepin County for an order terminating the mother's parental rights to the child in accordance with the provisions of §§ 260.221 and 260.231 of the Juvenile Court Act.[4] At the hearing in juvenile court, an attorney representing Thomas McDonald appeared and disclosed that his client claimed to be the father of the child and desired to participate at the hearing for the purpose of urging that the custody of the child be granted to him. Thereupon, a motion was made to continue the matter for the purpose of preparing for the hearing and to present a plan supporting the putative father's request that he be appointed guardian and be granted custody. Upon objection of the attorneys for

---

[2] "The parents and guardian, if there be one, of a legitimate child may enter into a written agreement with the commissioner of public welfare or an agency, giving the commissioner or such agency authority to place the child for adoption. The mother of an illegitimate child also may enter into such written agreement, * * *. Such agreement and consent shall be in the form prescribed by the commissioner. The agreement shall be executed by the commissioner or agency, or one of their authorized agents, and all other necessary parties, and shall be filed, together with the consent, in the proceedings for the adoption of the child."

[3] "Except as provided in subdivision 3, notice of the hearing upon a petition to adopt a child shall be given to the parents and guardian, if any, of any legitimate child and the mother and guardian, if any, of an illegitimate child, unless they have consented to the adoption or waived notice of the hearing. The notice of the hearing may be waived by a parent, guardian or other interested party by a writing executed before two competent witnesses and duly acknowledged. * * *"

[4] Section 260.231 outlines the procedure to be followed in initiating a termination proceeding, and subd. 2 thereof provides for termination "only after a hearing before the court, in the manner provided in section 260.155."

the welfare department and for the mother, the court denied the motion and proceeded with the hearing.

While the putative father, by his counsel, was permitted to remain at the hearing, he was not permitted to present evidence or to cross-examine any witnesses who testified. The testimony presented established the facts essentially as stated above; and furthermore, it established that Thomas McDonald was the father but that paternity had not been adjudicated nor his fatherhood acknowledged in writing, and that he had recently married Frances Camille McDonald. The mother of the child acknowledged her execution of the document giving her consent to a termination of parental rights and expressed her wish that the Children's Home Society be appointed guardian of the child, and also that under no circumstances should the putative father receive custody. Upon this proceeding the court determined that the Children's Home Society should be appointed guardian and be granted custody of the child, and that the mother's parental rights should be terminated.

Thereafter the putative father moved the court for a new hearing in the matter of termination of parental rights or, in the alternative, for an order discharging the guardianship and custody of the Children's Home Society and placing the child under the guardianship and custody of the putative father. This motion was supported by affidavits which included a written acknowledgement by Thomas McDonald that he was the father of the child. According to his counsel he had previously refused to sign an admission because the request to do so by the Hennepin County Welfare Department required that he waive any and all rights to notice and that he consent to the placing of the child in the custody of a child-placing agency for the purpose of having the child adopted. The motion was further supported by an affidavit executed by petitioner's wife, Frances Camille McDonald, who expressed her earnest desire to join with her husband in the adoption of the child. It appeared that movant and his wife were 45 and 58 years of age, respectively.

No testimony was offered or received at the hearing on the motion, the agreed issue being whether or not the putative father had

any standing to participate in a hearing to terminate parental rights or any rights to custody upon termination of the parental rights of the mother. Upon arguments of counsel, the court denied the motion and the putative father appeals.

Contrary to the contentions of the interested parties to this proceeding, the issue is not whether appellant here has a right to custody of the child, but solely whether or not a putative father, voluntarily appearing and openly acknowledging paternity at a hearing to terminate parental rights, is entitled to be heard, to present evidence and cross-examine witnesses, and to offer his own plan with respect to the custody and guardianship of such child. It is clear that appellant was not afforded such an opportunity either at the termination hearing or at the hearing on his motion thereafter although he requested permission to so participate.

The proceedings here are governed by the provisions of the Juvenile Court Act and our adoption statute. Neither the proceeding to terminate parental rights, as authorized by § 260.221, nor adoption was known at common law. In re Adoption of Zavasky, 241 Minn. 447, 63 N. W. (2d) 573. Therefore, in determining the rights of a putative father to be heard at a proceeding such as this, we must examine the statutory provisions.

Section 260.221 authorizes the juvenile court, upon petition, to terminate all rights of parents to a child in the case of "written consent of parents who for good cause desire to terminate their parental rights."[5] Since plural words of a statute must be construed to include the singular,[6] the written consent and desire of one parent is sufficient to initiate the filing of the petition. It may be filed by any reputable person having knowledge of the circumstances, but termination can be ordered only after notice and hearing.[7] In the case of a petition to

---

[5] A petition to terminate such rights may also be filed and termination ordered in case of abandonment, unconscionable deprivation of parental care and protection, gross neglect, or if the parents are found unfit to retain custody. § 260.221(b) (1, 2, 3, 4).

[6] § 645.08(2).

[7] § 260.231, subds. 1 and 2.

terminate the parental rights to an illegitimate child, a summons specifying time, place, and purpose of the hearing, reciting the substance of the petition or attached to a copy of it, must be served upon the person having custody or control of the minor and the mother unless such persons voluntarily appear.[8] There is no requirement that such notice be served on the putative father. Rather, the adoption laws as well as the termination of parental rights sections of the Juvenile Court Act—which should be construed together to effect the over-all purpose—especially negative the necessity of such notice. These provisions also negative any requirement that the putative father give his consent as a prerequisite to adoption.[9] Thus, there should be no question that a putative father cannot challenge the validity of an order terminating parental rights on the ground that he failed to receive notice. Further, an order terminating such rights, initiated upon the consent of a mother, effectually terminates any rights that the putative father may have in the same way that the rights of a nonconsenting father of a legitimate child would be terminated where there has been compliance with procedural requirements as to notice and hearing.

It is specifically required by § 260.231, subd. 2, that the hearing be conducted "in the manner provided in section 260.155," the general provisions relating to hearings in juvenile court. Especially pertinent to our problem is the requirement of subd. 6 of the latter section which provides that:

"The minor and *his parent,* guardian, or custodian are *entitled to be heard, to present evidence material to the case, and to cross examine witnesses appearing at the hearing.*" (Italics supplied.)

The Juvenile Court Act defines parent as "the natural or adoptive parent of a minor."[10] In In re Welfare of Shady, 264 Minn. 222, 118 N. W. (2d) 449, we construed this to include the putative father. While this definition is at variance with the suggestion made by child welfare

---

[8] § 260.135.

[9] §§ 260.135, subd. 2; 259.24; 259.25; and 259.26.

[10] § 260.015, subd. 11. This definition is identical with the definition of parent in our adoption laws. § 259.21, subd. 3.

agencies,[11] a natural parent unmistakably includes the acknowledged father of an illegitimate child.[12]

From the explicit language of these statutes, it is clear that the legislature intended that a putative father be considered a parent in proceedings to terminate parental rights. As such, when he appears at the hearing, he has the right to be heard, to cross-examine, and to present evidence directed at the primary and all-pervading issue—the welfare of the child. Although it may be so argued, this right does not arise from the fact of parentage or from any recognition of a claim that he has a right to custody secondary only to the mother, but simply because the statute is declaratory of the policy of this state. We know of no restriction on the power of the legislature to remove this right. It could be as forcefully argued that the right to receive notice of such a proceeding arises out of the fact of parentage or of a claimed right to custody; but it is conceded by all that no such right exists under our statutory procedures. Arguments concerning the mischief created by granting a right to be heard at the hearing should, therefore, be directed to the legislature.

It is urged that a judicial recognition of this right would be contrary to the strong public interest in the welfare of illegitimate children and would result in placing unreasonable burdens upon effective and adequate planning for the adoptive placement of such children. While we agree that it is of the utmost importance that these unfortunate

---

[11]Compare the suggestion of the U. S. Department of Health, Education, and Welfare in its 1961 edition of "Legislative Guides for the Termination of Parental Rights and Responsibilities and the Adoption of Children," at page 4:

"In termination and adoption legislation it is essential to include the definitions which follow.

" 'Parent' means (1) the mother, (2) a father as to whom a child is legitimate, (3) a person as to whom a child is presumed to be a legitimate child, or (4) an adoptive parent; but such term does not include a parent as to whom the parent - child relationship has been terminated by judicial decree." See, also, Katz, *Judicial and Statutory Trends in the Law of Adoption,* 51 Georgetown L. J. 64.

[12]In re Adoption of a Minor, 81 App. D. C. 138, 142, 155 F. (2d) 870, 874.

infants be placed for adoption as soon as possible (because it is true that a baby quickly identifies itself with those who care for it and nurture it), we fail to see how a putative father's right to be heard would jeopardize the status of such children. The proceeding is in the nature of an investigation rather than a trial within the concept of the adversary tradition. When a proceeding to terminate parental rights is properly initiated and a hearing held, the applicable statutes grant the putative father a right to be heard only if he appears at the hearing. Since notice is not required, any failure to appear at the hearing can be regarded as a waiver of this statutory right. It may be that the best welfare of illegitimate children would support a declaration that the putative father has no legal right to notice or to be heard at a proceeding to terminate parental rights or to custody; but such assertion, however sound, does not permit us to rewrite the definition of the word "parent" to exclude a putative father.

It is reasonable to assume that one of the reasons for granting the acknowledged father the right to be heard is to foster and encourage the establishment of paternity so that the consequent duty to support can be fixed and enforced.[13] A determination of paternity usually serves the best interest of an illegitimate child;[14] accordingly, an enactment granting such right following acknowledgment is not devoid of purpose and cannot be regarded as an unreasonable exercise of legislative power.

The issue presented by this appeal does not require a determination of the putative father's right to custody or a declaration of any other rights which the parties may urge or argue. Our decision is not intended to express any views regarding such matters. It is undisputed that appellant was denied the statutory right to be heard when he appeared at the hearing. We hold that where a putative father in fact

---

[13] § 257.18; State v. Johnson, 216 Minn. 427, 13 N. W. (2d) 26, 155 A. L. R. 23.

[14] It should be noted that a written acknowledgment not only renders the father of an illegitimate child liable for confinement expenses of the mother and support of the child (§ 257.18, et seq.), but it also confers upon the child the right to inherit from him. § 525.172.

appears at such hearing and acknowledges his paternity he must be afforded the rights specifically granted by § 260.155, subd. 6, to the end that his contentions, availability, or plan regarding the best welfare of the child may be considered by the court, in contrast to any other plan or proposal urged by the mother, any child welfare agencies, or interested parties.

It is undisputed that the mother's consent initiating this proceeding was mistakenly based on her understanding that under no circumstances was the acknowledged father to be given custody. Since there is a possibility, however remote, that his plan may serve the child's best interest, her consent should be vitiated. Any rehearing pursuant to the order of this court can, therefore, only occur if reinitiated under authorized statutory procedures without any effect being given to the mother's prior consent.

Reversed and remanded.

MR. JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.