REL: 10/31/2014

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

OCTOBER TERM, 2014-2015

————————————

1131412

————————————

Ex parte S.L.J.F.

PETITION FOR WRIT OF CERTIORARI
TO THE COURT OF CIVIL APPEALS

(In re: S.L.J.F.

v.

Cherokee County Department of Human Resources)

(Cherokee Juvenile Court, JU-11-131.03;
Court of Civil Appeals, 2130543)

STUART, Justice.

1131412

WRIT DENIED. NO OPINION.

Bolin, Murdock, Shaw, Main, Wise, and Bryan, JJ., concur.

Moore, C.J., and Parker, J., dissent.

1131412

MOORE, Chief Justice (dissenting).

I respectfully dissent from this Court's denial of the petition for a writ of certiorari filed by S.L.J.F. ("the mother"). I believe that the Cherokee Juvenile Court lacked clear and convincing evidence showing that the mother's conduct and circumstances warranted the termination of her fundamental right to the custody and care of her children. I also believe that the juvenile court may not have considered all viable alternatives to terminating the mother's parental rights. I would grant the mother's petition and review the full record in this case.

The mother has three children: J.R.B. ("the son"), E.R.F. ("the half brother"), and J.L.F. ("the half sister") (the half brother and the half sister are hereinafter collectively referred to as "the half siblings"). C.B. ("the father") is the biological father of the son. The mother was never married to the father. The mother's husband is E.R.F., Sr. ("the husband"), who is the biological father of the half siblings. The Court of Civil Appeals recounted the following relevant facts:

>        "In December 2010, before the half sister was
>    born, [the Cherokee County Department of Human

3

Resources ('DHR')] became involved with the family after receiving reports of, among other things, alcohol abuse and domestic violence in the home. There is no indication in the record that the mother abused alcohol; instead, that allegation was against the husband, with whom the mother had often left the son and the half brother. At that time, DHR implemented the first of 'at least' four safety plans. DHR placed the son with K.M. ('the aunt'), the father's sister, and it placed the half brother with B.J.S. ('the maternal stepgrandfather') and C.S. ('the maternal grandmother') (hereinafter referred to collectively as 'the maternal grandparents'). The maternal grandparents lived in Georgia. Thereafter, the half sister was born and the mother participated in a number of services intended to reunify the family. At times the mother made progress, and the son and the half siblings were temporarily reunited with the mother; however, as already mentioned, DHR implemented at least three other safety plans. In March 2013 the juvenile court awarded custody of the son and the half siblings to DHR, and DHR placed them together in a foster home. On September 23, 2013, DHR filed petitions seeking to terminate the parental rights of the father regarding the son and of the mother regarding the son and the half siblings.

"The termination-of-parental-rights trial was held on November 20, 2013. On December 10, 2013, the juvenile court entered an order reserving its judgment. The juvenile court required DHR to evaluate the maternal grandparents and to report the results of a home study of the maternal grandparents' home pursuant to the Interstate Compact on the Placement of Children ('ICPC'), codified at § 44-2-20 et seq., Ala. Code 1975. On March 6, 2014, DHR notified the juvenile court that placement of the children with the maternal grandparents was not approved. That same day, the juvenile court entered separate judgments terminating the father's parental rights to the son

1131412

> and terminating the mother's parental rights to the son and to the half siblings."

S.L.J.F. v. Cherokee Cnty. Dep't of Human Res., [Ms. 2130543, August 22, 2014] ___ So. 3d ___, ___ (Ala. Civ. App. 2014)(footnote omitted). On appeal to the Court of Civil Appeals, the mother challenged the termination of her parental rights to all three of her children. The Court of Civil Appeals affirmed the judgment terminating the mother's parental rights to the son and dismissed the appeal from the judgment terminating her parental rights to the half siblings. S.L.J.F., ___ So. 3d at ___. The mother's petition for a writ of certiorari concerns only the termination of her parental rights to the son, not to the half siblings.

The facts before us and in the opinion of the Court of Civil Appeals do not present clear and convincing evidence so as to require the termination of the mother's parental rights. See § 12-15-319(a), Ala. Code 1975 (providing factors juvenile courts are to consider in determining whether parents are unwilling or unable to discharge their parental duties). See also M.C. v. L.B., 607 So. 2d 1267, 1268-70 (Ala. Civ. App. 1992)(stating that a natural parent's prima facie right to the care and custody of his or her children can be overcome only

5

1131412

by clear and convincing evidence). It was the husband, not the mother, who struggled with substance abuse and who had a history of domestic violence. The children were not the objects of the husband's domestic violence. The mother points out that she worked at fast-food restaurants to support her family while undergoing psychological treatment to improve her confidence and self-esteem. The mother later left the husband because of his substance abuse. Although she began to date another man who had been charged with domestic violence for an incident involving his mother, that man did not abuse the mother or her children, and the Cherokee County Department of Human Resources ("DHR") did not find it necessary to investigate the incident between him and his mother. In an effort to reunite with her children, the mother participated in several services, including ECA Focus, an in-home service that assists parents who are in danger of losing their children. The mother claims to have attended all of her scheduled meetings with ECA Focus. She acknowledges that she suffers from financial hardships and that she had been treated with Prozac for her depression. She points out, however, that DHR had never accused her of abusing prescription drugs or of

suffering from addiction. The mother states that she has never refused a drug test and that the results of all of her drug tests were negative. Moreover, the mother claims that, at the time of the termination-of-parental-rights hearing, she was living with her mother and stepfather, who were helping her to reunite with her children. The mother maintained regular visitation with the children but was unable to visit the children for a two-month period because, she says, she had no transportation; however, she indicates that, since moving in with her mother and stepfather, she has secured reliable transportation.

The opinion of the Court of Civil Appeals also does not recite clear and convincing evidence that supports the juvenile court's conclusion that no viable alternatives to the termination of the mother's parental rights exist.

> "Parents and their children share a liberty interest in continued association with one another, i.e., a fundamental right to family integrity. Santosky v. Kramer, [455 U.S. 745 (1982)]. A state may only interfere with that right to achieve a compelling governmental objective using the most narrowly tailored means available. Roe v. Conn, 417 F. Supp. 769 (M.D. Ala. 1976). Accordingly, parental rights may be terminated only when 'less drastic measures would be unavailing.' 417 F. Supp. at 779. Under Alabama law, a juvenile court may terminate parental rights only when no viable alternative exists. [Ex

parte] Beasley, [564 So. 2d 950 (Ala. 1990)]. Stated conversely, if a viable alternative exists to achieve the compelling governmental objective at stake, a juvenile court may not terminate parental rights."

J.B. v. DeKalb Cnty. Dep't of Human Res., 12 So. 3d 100, 115 (Ala. Civ. App. 2008). The mother claims that placement of the son with his aunt or with his maternal grandmother was a viable alternative to terminating the mother's parental rights. The maternal grandmother, however, does not appear to have been a viable alternative to the termination of the mother's parental rights because she resides in Georgia, which, as the potential receiving state, according to the Court of Civil Appeals, had not approved the proposed placement of the son with the maternal grandmother. ___ So. 3d at ___. See Interstate Compact on the Placement of Children, § 44-2-20, Article III, subpart (d), Ala. Code 1975 ("[T]he child shall not be sent, brought or caused to be sent or brought into the receiving state until the appropriate public authorities in the receiving state shall notify the sending agency, in writing, to the effect that the proposed placement does not appear to be contrary to the interests of the child."). The son's aunt, on the other hand, does appear to

have been a viable alternative to the termination of the mother's parental rights to her son.

The aunt, who was willing to be a placement for the son, has a house and two children of her own. A DHR worker testified during trial that the son had already been placed successfully with the aunt for a time and that the juvenile court could consider the aunt as a viable placement option. This same DHR worker, the mother says, testified that she did not have any safety concerns about placing the son with the aunt. There was disputed testimony at trial regarding whether the aunt had allowed the father to visit the son without supervision while the son was staying with her. The father denied that such visitation had taken place. Such disputed testimony hardly rises to the level of clear and convincing evidence that placement with the aunt was not a viable alternative to terminating the mother's parental rights.

Sometimes courts need to be reminded of the foundational principles on which our legal system is based.[1] One such

---

[1]"The prima facie right of a natural parent to the custody of his or her child ... is grounded in the common law concept that this primary parental right of custody is in the best interest and welfare of the child as a matter of law." Ex parte Mathews, 428 So. 2d 58, 59 (Ala. 1983). "Proceedings to

1131412

principle involves a natural parent's rights to the custody and care of his or her children. "The laws of nature teach us that the relation of parent and child is sacred ...." Montgomery v. Hughes, 4 Ala. App. 245, 247, 58 So. 113, 113 (1911). "God, not the state, ordained the institution of the family." Ex parte J.M.P., 144 So. 3d 287, 297 (Ala. 2013)(Moore, C.J., dissenting). "Because God, not the state, has granted parents the authority and responsibility to govern their children, parents should be able to do so unfettered by state interference," Ex parte G.C., 924 So. 2d 651, 677 (Ala. 2005)(Parker, J., dissenting), so long as those same parents are not "found unfit by clear and convincing evidence" and have not acted "to voluntarily relinquish this right to custody." G.C., 924 So. 2d at 679 (Parker, J., dissenting).

"Inasmuch as the termination of parental rights strikes at the very heart of the family unit, a court should terminate parental rights only in the most egregious of circumstances." Ex parte Beasley, 564 So. 2d 950, 952 (Ala. 1990). "The law

_____

terminate parental rights were unknown at common law." In re Termination of Parental Rights of P.A.M., 505 N.W.2d 395, 397 (S.D. 1993)(citing In re Zink, 264 Minn. 500, 119 N.W.2d 731 (1963)). Such proceedings are creatures of statute and of recent origin.

10

1131412

recognizes that a higher authority ordains natural parenthood, and a fallible judge should disturb the relationship thus established only where circumstances compel human intervention." Ex parte Sullivan, 407 So. 2d 559, 563-64 (Ala. 1981).

> "[E]ach time a court considers a child-custody dispute it should begin by taking judicial notice of the fact that parents possess the right and responsibility to govern and raise their children; that God, not the state, has given parents these rights and responsibilities, and, consequently, that courts should interfere as little as possible with parental decision-making."

G.C., 924 So. 2d at 677-78 (Parker, J., dissenting). "Parental rights are indeed cherished and deserve the law's utmost protection against unwarranted interference." Ex parte Beasley, 564 So. 2d at 954. As I have stated elsewhere, "the law favors the natural parents of a child by presuming that a child's best interests are served by placing the child in the custody of its natural parents." Ex parte C.V., 810 So. 2d 700, 703 (Ala. 2001) (Moore, C.J., concurring specially).

By denying the mother's petition for a writ of certiorari, this Court has wrongfully denied this mother, who has neither abused nor neglected her children, parental custody of her son, with whom she has labored to reunite.

11

1131412

Furthermore, the fact that the aunt may have allowed the son unsupervised visitation with the father, who had never abused the son or the half siblings, is not a sufficient ground for determining that the aunt is not a viable alternative to the termination of the mother's parental rights. Finding no clear and convincing evidence that the mother was unfit for parenting or that there was no viable alternative to terminating the mother's parental rights, I dissent. I fear the Court has disregarded a fundamental and cherished right that it is bound by law to protect and has presumed what is best for the son before evaluating the evidence of parental fitness.